# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON M. JUDD,<br><br>        Plaintiff,<br><br>    v.<br><br>D. ADAMS, et. al.,<br><br>        Defendants. | CV F   05 1161 AWI SMS P<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND (Doc. 1 )<br><br>ORDER DIRECTING CLERK OF COURT TO SEND PLAINTIFF BLANK CIVIL RIGHTS FORM |

Jason M. Judd ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the instant action on September 14, 2005, naming Warden D. Adams,

**A. SCREENING STANDARD**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

**B. SUMMARY OF COMPLAINT**

Plaintiff states that he is of the Asatru/Odinist faith and that staff at CSATF have discriminated against him on the basis of his faith.  Specifically, Plaintiff states that in October of 2004, he was approved to have in his possession a small alter cloth.  In December of 2004, Plaintiff was denied his religious Thor's hammer medallion and alter cloth.  Plaintiff complains that in order to have these items returned, he had to file an inmate grievance which was granted and the items were returned to him.

On march 12, 2005, Plaintiff was in the exercise yard wearing his medallion and alter cloth.  Plaintiff was informed by Correctional Officer Patton that he could not have the items. Plaintiff informed him that he had permission to have the items and was told to return to his cell and retrieve the Chrono authorizing possession of the items.  Plaintiff complied and produced the document but was told by Patton that he didn't care about the Chrono and that Plaintiff was to return the items to his cell or he would confiscate them.  Plaintiff complied.  Plaintiff overheard other officers asking about the red bandana and whether Plaintiff thought he was a "Blood" or something.  The next day he was called to the Lieutenant Lloren's office and asked what happened regarding the bandana.  Plaintiff explained what transpired and was informed that he should not worry about it and that Lt. Lloren would find out what the policy was for Plaintiff to wear his religious headwear.  Plaintiff states Lt. Lloren never spoke with him again about it.

On May 10, 2005, Plaintiff ordered a sterling silver "replacement chain" from World Tree Publications, an approved vendor but the item did not come.  Plaintiff wrote to the vendor on June 13, 2005, inquiring about his order.  The vendor provided Plaintiff with a letter containing a

1 receipt and a tracking number from the U.S. Postal Service indicating that the chain was received
2 at Corcoran on May 27, 2005.  Plaintiff made inquiry but did not succeed in obtaining
3 information about his chain.  Thus, on June 29, 2005, he filed another inmate grievance.

4       On July 8, 2005, Correctional Officer T. Patton searched Plaintiff's cell and confiscated
5 his rabbit pelt which is one of the items he was authorized to have.  C/O Patton also took other
6 personal items such as Plaintiff's blank typing paper but did not mark them on the confiscation
7 receipt.

8       Plaintiff states that on July 13, 2005, he was visited by an unnamed Correctional Officer
9 regarding his grievance and was told that the R&R Sgt. Sekula told Plaintiff that the chain was
10 sent back because Plaintiff already had a chain in his possession.  Plaintiff asked how they could
11 send the chain back without following codified procedures.

12       On July 14, 2005, Plaintiff was informed by C/O Flores that she had spoken with Sgt.
13 Sekula and that Plaintiff would have the chance to have the chain resent to him.  Plaintiff wrote
14 to World Tree Publications and asked them to resend the chain.

15       On July 20, 2005, Plaintiff received his 602 appeal which was denied on the grounds that
16 Plaintiff already had one chain in his possession.  The grievance also shoed that the chain was
17 returned to the vendor on June 6, 2005, and was signed by C/O Grayson. Plaintiff continued his
18 appeal process.

19       Plaintiff states that on August 1, 2005, an unnamed Correctional Officer informed
20 Plaintiff that his inmate appeal was granted and that he was going to go to the law library but
21 then was told by another officer that it was a mistake and he was not going anywhere.  Plaintiff
22 demanded to know everyone's names that were involved because he felt it was just another way
23 the prison was playing games with his religious rights.

24       On August 9, 2005, Plaintiff was wearing his religious bandana on his head when C/O
25 Rocha said that he saw Plaintiff was wearing his contraband head-wear and that he should
26 confiscate it.  He laughed and then walked away.  Plaintiff states that this was disrespectful of his
27 rights.

28       Plaintiff was informed on August 12, 2005, that the was to get dressed for a phone call

1  regarding his inmate grievance. Sgt. Sekula told Plaintiff that his appeal was being partially
2  granted and that she was going to let Plaintiff reorder his chain. Plaintiff complained that this
3  was unacceptable because C/O Grayson never returned the chain to World Tree in the first place.
4  Plaintiff states that Sgt. Sekula told him she was going to contact the vendor to find out if they
5  received the chain and if they hadn't, she would track the item to find out where it went. If it was
6  lost, they would replace it. Plaintiff states he was never contacted by her again about the chain.
7      Plaintiff states that he finally received his chain on August 25, 2005, but that he has been
8  put through a headache to get it. Plaintiff also states that the prison is not "running
9  Asatru/Odinist services on C-yard or letting worshipers gather for the four main festivals, feasts
10 and holy days.
11     Plaintiff states that Correctional Officers Patton, Grayson and Sekula and all other yard
12 staff have violated his constitutional rights to exercise his religion by denying him CDC
13 approved religious items and services. Plaintiff is seeking injunctive relief and compensatory
14 and punitive damages.

**C. CLAIMS FOR RELIEF**

   *1. Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named

4

defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

### 2. Supervisory Liability

Supervisory personnel are generally not liable under Section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).  To state a claim for relief under Section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that Defendant Adams personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646.

### 3. Property Deprivation

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due

5

Process Clause.

Plaintiff's allegations that Defendant Grayson confiscated his typing paper and did not include that on the list of items that were taken from his cell does not give rise to a constitutional claim for relief.

### 4. *Religious Freedoms Claims*

#### A. First Amendment

The First Amendment provides in relevant part that the government shall not prohibit the free exercise of religion. U.S. Constitution, Amend. I. Nevertheless, free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987).  Thus, to prevail on a free exercise claim, an inmate must show that a defendant burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests. Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir.1997).  To determine whether a policy or procedure that impinges on constitutional rights is reasonably related to legitimate penological interests, a court must analyze whether (1) a valid, rational connection between the policy or procedure and legitimate governmental interests exists; (2) alternative means of exercising the right by the inmate remain open; (3) accommodation of the inmate's right will adversely impact staff, other inmates, or the allocation of prison resources; and (4) ready alternatives to the policy or procedures exist. Turner v. Safley, 482 U.S. 78, 90 (1987); Henderson v. Terhune, 379 F.3d 709, 714 (9th Cir.2004); Clement v. California Dep't of Corr., 364 F.3d 1148, (9th Cir.2004).  Prison resources are finite and that not every religion can be, or must be, identically accommodated. See Cruz v. Beto, 405 U.S. 319, 322 (1972); Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir .1987). Thus, in the prison context, a "place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir.1993).  Instead, prisons must afford inmates "reasonable opportunities" to exercise their religion. Cruz, 405 U.S. at 322. That is, "[p]risons need not provide identical facilities or

6

personnel to different faiths, but must make 'good faith accommodation of the [prisoners'] rights in light of practical considerations.' " Freeman, 125 F.3d at 737 (*quoting* Toombs, 827 F.2d at 569) (*internal citation omitted and modification in original*).

In this case, although Plaintiff alleges that certain religious items were confiscated and then returned to him, he does not allege sufficient facts to state a claim under the First Amendment.

### B.  RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest."

See Pub.L.No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc-1).  Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs.  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest."  Id. (emphasis in original).  "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id.

Plaintiff does not allege facts sufficient to state a cognizable claim for relief under RLUIPA.

### 3. Religious Freedom Restoration Act ("RFRA")

Plaintiff also assertions that the Defendants actions violated the Religious Freedom Restoration Act of 1993 ("RFRA").  However, RFRA was found to be unconstitutional by the United States Supreme Court in City of Boerne v. P.F. Flores, 521 U.S. 507 (1997). Accordingly, Plaintiff fails to state a cognizable claim for relief under RFRA.

### 5. Violation of State Regulations

Throughout his amended complaint, plaintiff refers to various sections of the California Code of Regulations. "Section 1983. . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (*internal quotations omitted.*) "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id. As such, Plaintiff may not pursue his claims for violations of state regulations in this action.

### 6. Rule 8(a)

A complaint must satisfy the requirement of Federal Rule of Civil Procedure 8(a), which calls for a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47.

In amending his Complaint, Plaintiff should refrain from solely telling a story in narrative fashion. Plaintiff should lay out each constitutional claim for relief and provide a *brief* statement of the facts indicating how the claim arose.

### D. CONCLUSION

The Court finds that Plaintiff's complaint does not contain any claims upon which relief can be granted under § 1983 against any of the Defendants. The Court will provide Plaintiff with time to file an Amended Complaint curing the deficiencies identified above should he wish to do so.

Plaintiff must demonstrate in the Amended Complaint how the conditions complained of resulted in a deprivation of his constitutional rights. See, Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The Amended Complaint must specifically state how each Defendant is involved. Further, there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423, U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is advised that Local Rule 15-220 requires that an Amended Complaint be complete in itself without reference to any prior pleading. As a general rule, an Amended Complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an Amended Complaint is filed, the original Complaint no longer serves any function in the case. Therefore, in an Amended Complaint, as in an original Complaint, each claim and the involvement of each defendant must be sufficiently alleged. The Amended Complaint should be clearly and boldly titled "AMENDED COMPLAINT," reference the appropriate case number, and be an original signed under penalty of perjury.

**E. ORDER**

The Court HEREBY ORDERS:

1. The Clerk of Court is DIRECTED to SEND Plaintiff a blank civil rights complaint form;
2. The Complaint is DISMISSED with leave to amend. WITHIN THIRTY (30) days from the date of service of this order, Plaintiff SHALL:
   a. File an Amended Complaint curing the deficiencies identified by the Court in this Order, or
   b. Notify the Court in writing that he does not wish to file an Amended Complaint and pursue the action but instead wishes to voluntary dismiss the case. See, Fed.R.Civ.P. 41(a)(1).

Plaintiff is forewarned that his failure to comply with this Order may result in a Recommendation that the Complaint be dismissed pursuant to Local Rule 11-110.

IT IS SO ORDERED.

Dated:    February 16, 2007              /s/ Sandra M. Snyder
icido3                                   UNITED STATES MAGISTRATE JUDGE